ROBERT RAFALKO *v.* UNIVERSITY OF
NEW HAVEN ET AL.
(AC 31580)

DiPentima, C. J., and Gruendel and Pellegrino, Js.

Argued December 9, 2010—officially released May 24, 2011

*Robert J. Rafalko*, pro se, the appellant (plaintiff).

*Howard Fetner*, with whom, on the brief, was *Felix J. Springer*, for the appellees (defendants).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Robert Rafalko, appeals from the summary judgment rendered in favor of the defendants, the University of New Haven (university) and Joel Marks, a professor at the university.[1] On

[1] The plaintiff was represented by counsel at trial and has represented himself with respect to this appeal. The defendants argued that the plaintiff abandoned all his claims on appeal as a result of an inadequate brief. We acknowledge that the plaintiff's appellate brief comes precariously close to that point. "Although we are mindful of our policy to be solicitous of pro se litigants . . . such policy is applicable only when it does not interfere with the rights of other parties. Although our courts allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law. . . . As this court recently noted, [f]or justice to be done . . . any latitude given to pro se litigants cannot interfere with the rights of other parties, nor can we disregard completely our rules of practice." (Citations omitted; internal quotation marks omitted.) *Shah* v. *Administrator, Unemployment Compensation Act*, 114 Conn. App. 170, 177, 968 A.2d 971 (2009).

The plaintiff's brief contains minimal citations to and analysis of the relevant case law. See generally *Bushy* v. *Forster*, 50 Conn. App. 233, 236, 718 A.2d 968, cert. denied, 247 Conn. 944, 723 A.2d 321 (1998). We take this opportunity to stress the importance of complying with our rules and note the severe consequences that may affect a party who elects to ignore them.

appeal, the plaintiff claims that the court improperly rendered summary judgment in favor of the defendants with respect to his four count complaint. We disagree and, accordingly, affirm the judgment of the trial court.

The court set forth the following facts and procedural history in its memorandum of decision. On November 14, 2005, the plaintiff filed a complaint alleging breach of contract, breach of the covenant of good faith and fair dealing and negligent misrepresentation against the university. The remaining count, alleging defamation, was directed at both defendants. The denial of the plaintiff's application for tenure was the origin of this action.

In his complaint, the plaintiff alleged that, in the spring of 1997, he was offered a position as an associate professor in the department of visual and performing arts and philosophy at the university. This appointment commenced in the fall of 1997 and ended in the spring of 1998. During this time, the plaintiff received both the 1976 faculty handbook (handbook) and the 1990 bylaws pertaining to the tenure and promotion committee, and the procedures and criteria for tenure and promotion (bylaws). The bylaws set forth five criteria for tenure and promotion at the university: teaching experience, education, scholarly activity, teaching ability and university service.

In the spring of 1998, the plaintiff received an annual review and his appointment at the university was renewed for an additional year. At the end of the 1998-1999 academic year, the plaintiff again received an annual review and an additional one year appointment to the university. In 1999, 2000, 2001, 2002 and 2003, the plaintiff did not receive an annual review but received one year appointments.

In the fall of 2002, the plaintiff submitted his application for tenure in accordance with the bylaws. On January 17, 2003, the plaintiff received a letter from the

chairman of the tenure and promotion committee informing him that he did not receive the required six votes necessary to be awarded tenure.[2] The plaintiff appealed this decision pursuant to the university's procedure. Ultimately that appeal was denied. He then initated the present action.

On December, 22, 2008, the defendants filed a motion for summary judgment pursuant to Practice Book § 17-44 et seq. The plaintiff filed a memorandum of law in opposition. The court filed its memorandum of decision granting the motion for summary judgment on September 25, 2009.

With respect to the breach of contract count, the court concluded that there were no facts in the record that the university did not follow its own procedures for tenure and promotion. Turning to the breach of the covenant of good faith and fair dealing count, the court noted that there were no facts to demonstrate that the decision to deny the plaintiff's tenure application was taken in bad faith. Regarding the negligent misrepresentation count, the court determined that no misrepresentations were made to the plaintiff and the criteria for the evaluation of tenure applications was always available. Last, with respect to the defamation count, the court noted that only the letter written by Marks to the tenure and promotion committee was cited by the plaintiff as defamatory. In this letter, Marks, as the chairperson of the plaintiff's department, evaluated the plaintiff's candidacy for tenure, ultimately recommending against tenure. The court concluded: "The letter was only provided to the tenure review committee in their assessment of the application for promotion by the plaintiff. Mr. Marks is entitled to his opinion about whether the

___

[2] This letter informed the plaintiff that members of the committee cast negative votes because of, among other things, inadequate research and insufficient scholarship.

plaintiff's work was impressive. To deem such an opinion as defamatory would have the court cross the bounds of academic freedoms that are protected under the first amendment [to] the [federal] constitution." Accordingly, the court rendered summary judgment in favor of the defendants with respect to all counts. This appeal followed.

As a preliminary matter, we set forth certain legal principles relevant to our discussion. Our Supreme Court has stated: "A court must be careful not to substitute its judgment improperly for the academic judgment of the school. A university's prerogative to determine for itself on academic grounds who may teach is an important part of our long tradition of academic freedom. . . . This academic freedom is rooted in the first amendment. . . . First amendment protection of academic freedom prevents courts from substituting their judgment for the judgment of the school. In other words, courts should not become Super-Tenure Review Committee[s]." (Citations omitted; internal quotation marks omitted.) *Craine* v. *Trinity College*, 259 Conn. 625, 646, 791 A.2d 518 (2002); see also *Neiman* v. *Yale University*, 270 Conn. 244, 256, 851 A.2d 1165 (2004). It is clear, however, that the principle of academic freedom does not preclude a court from vindicating the contractual rights of an individual denied tenure in breach of an employment contract. *Craine* v. *Trinity College*, supra, 654–55.

We now set forth our standard of review. "Pursuant to Practice Book § 17-49, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Such questions of law are subject to plenary appellate review. . . . In deciding whether the trial court properly determined that there was no genuine issue of material fact,

we review the evidence in the light most favorable to the nonmoving party." (Citation omitted; internal quotation marks omitted.) *Faigel* v. *Fairfield University*, 75 Conn. App. 37, 39–40, 815 A.2d 140 (2003).

"Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court . . . ." (Internal quotation marks omitted.) *Hodgate* v. *Ferraro*, 123 Conn. App. 443, 459, 3 A.3d 92 (2010). This court has stated: "It is frequently stated in Connecticut's case law that, pursuant to Practice Book §§ 17-45 and 17-46, a party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred." (Internal quotation marks omitted.) *Shukis* v. *Board of Education*, 122 Conn. App. 555, 565, 1 A.3d 137 (2010).

As to his claim of breach of contract, the plaintiff argues that the handbook requires that tenure track candidates be given annual reviews by the department chairperson to assist the candidate in obtaining tenure. Our Supreme Court has recognized that "[a] faculty manual that sets forth terms of employment may be considered a binding employment contract." *Craine* v. *Trinity College*, supra, 259 Conn. 655; see also *Daley* v. *Wesleyan University*, 63 Conn. App. 119, 120, 772 A.2d 725, cert. denied, 256 Conn. 930, 776 A.2d 1145 (2001). Section 5.6 of the handbook states that each

department is expected to develop its own procedures, criteria and guidelines for the evaluation of faculty. In appendix II of the handbook, it is noted that an annual meeting between the faculty member and his or her chairperson "will be held." This section further states that the faculty member "is expected to have a significant role in the determination of appropriate goals and their attainment."

In the present case, the plaintiff alleged that he did not have an annual review in 1999, 2000, 2001, 2002 and 2003. Along with their motion for summary judgment, the defendants submitted evidence in the form of the plaintiff's deposition testimony that the plaintiff failed to timely prepare a self-evaluation, which was a preliminary step to the annual review process. Further, the plaintiff acknowledged that he knew of the need to publish in scholarly journals in order to earn tenure at the university.

As we have stated, summary judgment is appropriate when there is no genuine issue of material fact. A material fact is one that will make a difference in the case. *Fiorelli* v. *Gorsky*, 120 Conn. App. 298, 305, 991 A.2d 1105, cert. denied, 298 Conn. 933 10 A.3d 517 (2010). The issue in the present case is whether the university breached its contract with the plaintiff. The undisputed facts show that the plaintiff's failure to publish an adequate number of scholarly works while employed at the university provided a basis for denying tenure. Further, the plaintiff was aware of the publication requirement for purposes of achieving tenure. The issue of a lack of an annual hearing is not a material fact because the evidence unequivocally shows that the plaintiff knew of the publication requirement and that the annual reviews would not have provided him with any additional information in this regard. Additionally, the plaintiff failed to initiate the annual review process. We conclude, therefore, that the court properly granted the

motion for summary judgment with respect to count one of the complaint.[3]

Next, we address the plaintiff's claim of breach of the covenant of good faith and fair dealing. "[I]t is axiomatic that the . . . duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. . . . In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. . . . The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term. . . .

"To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith. . . . Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." (Citations omitted; internal quotation marks omitted.) *De La Concha of Hartford, Inc.* v. *Aetna Life Ins. Co.*, 269 Conn. 424, 432–33, 849 A.2d 382 (2004).

In his brief, the plaintiff has failed to point to any evidence of bad faith by the university. His argument

---

[3] We note that our rationale is slightly different than that of the trial court. "[I]t is axiomatic that [w]e may affirm a proper result of the trial court for a different reason." (Internal quotation marks omitted.) *Gaffey* v. *Gaffey*, 91 Conn. App. 801, 805 n.1, 882 A.2d 715, cert. denied, 276 Conn. 932, 890 A.2d 572 (2005).

primarily relates to his claim that the court improperly rendered summary judgment on his breach of contract count. As we have already concluded that the court's decision with respect to that count was proper and because the plaintiff has failed to demonstrate any evidence of bad faith, we conclude that the court properly granted summary judgment with respect to the second count.

We next address the plaintiff's claim of negligent misrepresentation. Our Supreme Court "has long recognized liability for negligent misrepresentation. . . . The governing principles [of negligent misrepresentation] are set forth in similar terms in § 552 of the Restatement (Second) of Torts (1977): One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Internal quotation marks omitted.) *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 143–44, 2 A.3d 859 (2010); see also M. Taylor & D. Krisch, Encyclopedia of Connecticut Causes of Action (2009) p. 46.

The plaintiff argues that the university misrepresented that he would receive an annual review. We note that a justifiable reliance on such a misrepresentation is necessary to succeed on this cause of action. See *Citino* v. *Redevelopment Agency*, 51 Conn. App. 262, 275, 721 A.2d 1197 (1998), overruled in part on other grounds by *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 130 n.10, 981 A.2d 1068 (2009); see also *Burnham* v. *Karl & Gelb, P.C.*, 50 Conn. App. 385, 390, 717 A.2d 811 (1998). In the present case, the evidence demonstrates that the plaintiff did not rely on annual reviews for information relating to the tenure process. Instead, he

acknowledged that he was aware of the criteria of tenure evaluations, especially the publication requirement. The lack of annual review, therefore, was not a material fact in this case. The absence of any dispute regarding the plaintiff's lack of reliance on the annual review with respect to his knowledge of the tenure process supports the trial court's granting of summary judgment with respect to the third count.

Last, we address the plaintiff's defamation count. The plaintiff argues that Marks' letter to the tenure and promotion committee constituted a defamatory statement. "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him . . . . To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." (Citation omitted; internal quotation marks omitted.) *Cweklinsky* v. *Mobil Chemical Co.*, 267 Conn. 210, 217, 837 A.2d 759 (2004); see also M. Taylor & D. Krisch, supra, p. 14. For a claim of defamation to be actionable, the statement must be false and truth is an affirmative defense. *Cweklinsky* v. *Mobil Chemical Co.*, supra, 228.

The plaintiff's brief contains many assertions regarding Marks' letter that lack evidentiary support. For example, he argues that Marks' letter was fourteen pages, single spaced, and "common sense dictates that the length of such a letter signals intense emotions on the part of the letter writer." He claims that this type of letter is typically only one or two pages long. Additionally, he makes reference to "numerous falsehoods" but, for the most part, fails to identify precisely what he

refers to. Last, there are several vague and unidentified references to "evidence" that would refute the decision of the trial court. We decline to consider these statements found in the plaintiff's brief, simply noting that "[s]peculation and conjecture have no place in appellate review." *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 815, 875 A.2d 71 (2005).

The trial court concluded that, in the letter, Marks opined that the scholarly work of the plaintiff was not that impressive. The court continued: "To deem such an opinion as defamatory would have the court cross the bounds of academic freedoms that are protected under the first amendment." In *Daley* v. *Aetna Life & Casualty Co.*, 249 Conn. 766, 795–96, 734 A.2d 112 (1999), our Supreme Court stated: "To be actionable, the statement in question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion. See *Mr. Chow of New York* v. *Ste. Jour Azur S.A.*, 759 F.2d 219, 230 (2d Cir. 1985) (no liability where restaurant review conveyed author's opinion rather than literal fact); *Hotchner* v. *Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977) ('[a] writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be')." We conclude, therefore, that the court properly determined that the letter written by Marks was not actionable under the tort of defamation. Accordingly, the court properly granted summary judgment with respect to the fourth count.

The judgment is affirmed.

In this opinion the other judges concurred.