******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

OMID NODOUSHANI *v.* SOUTHERN CONNECTICUT
STATE UNIVERSITY ET AL.
(AC 34778)

DiPentima, C. J., and Lavine and Borden, Js.

*Argued April 22—officially released August 5, 2014*

(Appeal from Superior Court, judicial district of New
Haven, Young, J.)

*William S. Palmieri*, for the appellant (plaintiff).

*Peter M. Haberlandt*, assistant attorney general, with
whom, on the brief, were *George Jepsen*, attorney general,
and *Ann E. Lynch*, assistant attorney general, for
the appellees (defendant Cecil Murphy et al.).

*Opinion*

BORDEN, J. This appeal arises from an incident in which the individual defendants, acting in their capacities as administrators of the defendant Southern Connecticut State University (university), allegedly made false and malicious statements accusing the plaintiff of submitting a fraudulent request for personal reimbursement for funds that he purportedly expended at a professional conference, ultimately resulting in his arrest. The plaintiff, Omid Nodoushani, appeals from the summary judgment rendered by the trial court in favor of the individual defendants, Cecil Murphy, Cheryl Norton, and Bharat Bhalla.[1] In this appeal, the plaintiff claims that the trial court improperly granted the defendants' motion for summary judgment on his false arrest, malicious prosecution, and defamation claims because it improperly determined that: (1) there was no genuine issue of material fact with respect to his common-law claims of false arrest and malicious prosecution; and (2) the defendants had qualified immunity as to his claim of defamation. We disagree with the plaintiff and affirm the judgment of the trial court.

The plaintiff brought this action against the defendants and the university, alleging, inter alia, false arrest and malicious prosecution, pursuant to 42 U.S.C. § 1983 and the common law, and defamation. The defendants and the university moved to dismiss the complaint, and the court, *A. Robinson, J.*, granted the motion to dismiss with respect to the university; see footnote 1 of this opinion; but denied the motion as to the defendants. Thereafter, the defendants filed a motion for summary judgment, which the plaintiff opposed pursuant to Practice Book § 17-45. Following oral argument, the court, *Young, J.*, issued a memorandum of decision granting the defendants' motion. This appeal followed.

The following procedural history and undisputed facts are relevant to our resolution of this appeal. The plaintiff was employed by the university as a tenured professor of management and management information systems, and as the director of the masters of business administration program in the university's school of business. In June, 2005, the university granted permission to the plaintiff to attend and present a paper at the Eighth Annual Conference on Ethics and Technology (conference), to be held on June 24 and 25, 2005, at St. Louis University in St. Louis, Missouri. On July 6, 2005, the plaintiff submitted to Bhalla, the interim dean of the university's school of business, a request for reimbursement in the amount of $1213.61 for expenses allegedly incurred while attending the conference. The plaintiff submitted several documents in support of his reimbursement request, including a copy of a conference registration receipt bearing his name and the amount expended of $175.

Bhalla had concerns regarding the authenticity of the plaintiff's reimbursement request. Specifically, Bhalla noted that the conference registration receipt was not an original document, and, therefore, may have been altered. In light of his concerns, Bhalla sent a memorandum to the plaintiff requesting further explanation and documentation of his travel expenses. The plaintiff, however, failed to provide original documentation of his conference registration receipt. Consequently, Bhalla contacted St. Louis University to determine whether the plaintiff actually attended the conference and presented a paper, as he had claimed.

Through his inquiry, Bhalla obtained several documents from St. Louis University indicating that the plaintiff had neither registered for the conference nor presented a paper. Following this inquiry, Bhalla sent to Norton, the university president, a memorandum with supporting documents gathered pursuant to his investigation (collectively, memorandum). The documents submitted to Norton in support of Bhalla's memorandum included the following: (1) the plaintiff's reimbursement request, including the registration receipt; (2) a list of the conference registrants, which did not include the plaintiff's name; (3) an e-mail to Bhalla from an employee of St. Louis University whose signature appeared on the plaintiff's registration receipt stating, "I believe that the receipt has been altered. I used the Ariel 16 font with only the first letter of the first and last names capitalized and the receipt has both names typed in all caps and looks to be in a font other than Ariel 16"; (4) a list of individuals who presented papers at the conference, which did not include the plaintiff's name; (5) an e-mail to Bhalla from the conference moderator stating that the plaintiff did not present his paper.

Subsequently, the university police department obtained a copy of Bhalla's memorandum and applied for a warrant to arrest the plaintiff on the charge of attempt to commit larceny in the second degree in violation of General Statutes §§ 53a-49 and 53a-123. The affidavit supporting the warrant application stated that it was based upon Bhalla's memorandum to Norton, as well as an investigation conducted by John Flynn, a detective with the university police department. On September 20, 2005, the police arrested the plaintiff pursuant to the arrest warrant. The state subsequently nolled the criminal charge on July 18, 2006.

The plaintiff subsequently filed this action against the defendants in their individual capacities, alleging, inter alia, false arrest, malicious prosecution, and defamation. With respect to his claims of false arrest and malicious prosecution, the plaintiff alleged that after he furnished his reimbursement request to Bhalla, "the defendant Bhalla falsely, maliciously and without probable cause to do so stated in writing in a letter to the . . . [u]niversity and Norton, inter alia, that: A. The

plaintiff engaged in '[f]raudulent behavior and ethical [misconduct]'; B. The plaintiff '[d]id not attend the 8th annual Ethics and Technology Conference in St. Louis University on June 24–25, 2005'; C. The plaintiff 'did not pay the registration fee of $ 175.00'; and D. The plaintiff was on vacation from June 16, 2005 through June 26, 2005." The complaint further alleged that "[a]t or about the time of the false allegations letter, the defendants met and planned the steps they would take against the plaintiff. . . . At that meeting, the defendant Norton ordered her subordinates to take the strongest possible measures against the plaintiff. . . . Thereafter . . . the defendant Bhalla or one or more agents, officers or employees of the . . . [u]niversity, with malice and without probable cause to do so, contacted the [university] [p]olice [d]epartment for the purpose of having the plaintiff arrested. . . . In support of the desire and effort to have the plaintiff arrested . . . the defendant Bhalla or one or more agents, officers or employees of the . . . [u]niversity provided the [university] police with the letter referenced above, containing numerous false allegations and statements regarding the plaintiff. . . . Numerous false statements contained in the letter appeared verbatim in the [a]ffidavit in support of the plaintiff's arrest. . . .

"Thereafter . . . the plaintiff was arrested, charged with criminal attempt to commit larceny in the second degree, and taken into custody from his office at the . . . [u]niversity. . . . With malice and for the purpose of using the criminal justice system to discredit the plaintiff, support his termination from employment and to ruin his academic career and cause him great emotional financial harm, the defendants caused the issuance of a warrant for the plaintiff's arrest on the false charge of attempt to commit larceny in the second degree. . . . As a result, the plaintiff was arrested and prosecuted continuously from September of 2005 through July of 2006, was required to hire attorneys for his defense, was required to appear many times in courts as an accused criminal to defend himself against the false and spurious allegations . . . . The defendants caused the aforesaid prosecution to be maintained and pressed against the plaintiff . . . . There was no probable cause for the aforesaid arrest or prosecution of the plaintiff and his said arrest and prosecution by the defendants was malicious, wilful, and wanton."

At a deposition conducted on June 3, 2010, in a related federal action brought by the plaintiff,[2] the plaintiff admitted under oath that he forged the conference registration receipt and that he did not present his paper at the conference. The plaintiff reaffirmed these admissions at a deposition in this case conducted on March 2, 2012. Later, the defendants filed a motion for summary judgment on all of the claims asserted against them on the ground that the plaintiff failed to produce any

admissible evidence sufficient to raise a genuine issue of material fact. The trial court granted the defendants' motion for summary judgment. This appeal followed. Additional facts and procedural history will be set forth as necessary.

As a preliminary matter, we set forth the appropriate standard of review. "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 10–11, 938 A.2d 576 (2008).

I

We first address the plaintiff's claim that the trial court improperly granted the defendants' motion for summary judgment with regard to his false arrest and malicious prosecution claims. As a threshold matter, we note the plaintiff's contention that his complaint alleges claims of false arrest and malicious prosecution pursuant to both § 1983 and the common law. The defendants contend that the plaintiff failed to properly plead his claims pursuant to § 1983, and, therefore, the claims set forth in the complaint are based entirely on the common law. For the purposes of this appeal, we agree with the trial court's conclusion that it is not necessary to determine whether the plaintiff's § 1983 claims were properly alleged in the complaint, in light of the fact that our substantive analysis of the false arrest and malicious prosecution claims is virtually

identical under § 1983 and the common law.[3] *Jocks* v. *Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) ("[c]laims for false arrest or malicious prosecution, brought under § 1983 . . . are 'substantially the same' as claims for false arrest or malicious prosecution under state law").

Turning to the substance of the plaintiff's false arrest and malicious prosecution claims, the plaintiff contends that the trial court improperly granted the defendants' motion for summary judgment because there existed a genuine issue of material fact regarding whether the defendants "instigated the proceedings against [him] by contacting the police and then encouraging . . . prosecution" on the basis of false allegations.[4] (Internal quotation marks omitted.) We disagree.

We first set forth the elements of the common-law claims of false arrest and malicious prosecution. "False imprisonment, or false arrest, is the *unlawful restraint by one person of the physical liberty of another*. . . . False imprisonment is categorized as an intentional tort for which the remedy at common law was an action for trespass. . . . [I]n the case of a false imprisonment the detention must be wholly *unlawful* . . . . To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly.

"An action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice. . . .

"The weight of modern authority is that *where the defendant has attempted to comply with legal requirements*, and has failed to do so through no fault of his own, false imprisonment will not lie, and the remedy is malicious prosecution. The policy is to give the defendant the privilege of making reasonable efforts to bring his case properly before the court, without liability unless his ultimate purpose is an improper one. W. Prosser, Torts (4th Ed.) § 11." (Citations omitted; emphases added; internal quotation marks omitted.) *Lo Sacco* v. *Young*, 20 Conn. App. 6, 19–20, 564 A.2d 610, cert. denied, 213 Conn. 808, 568 A.2d 793 (1989).

We conclude that the defendants satisfied their initial burden of demonstrating the absence of a genuine issue of material fact with regard to the plaintiff's false arrest and malicious prosecution claims. See *Ramirez* v. *Health Net of the Northeast, Inc.*, supra, 285 Conn. 10–11. We agree with the trial court's determination that, "[i]n viewing the evidence in the light most favorable

to the plaintiff, the defendants have offered substantial evidence that the defendants utilized the proper legal channels to report their complaint against the plaintiff." Therefore, the defendants demonstrated that there was no genuine issue of material fact as to whether they acted unlawfully or without probable cause.

In particular, the defendants submitted ample documentation in support of their motion for summary judgment, thereby demonstrating that any suspicions with respect to the fraudulent nature of the plaintiff's reimbursement request were well-founded and based on a good faith investigation conducted by Bhalla. The defendants submitted a copy of Bhalla's affidavit, which details the steps that he took to investigate the authenticity of the plaintiff's reimbursement request. They additionally provided the documents that Bhalla obtained pursuant to his investigation, including numerous correspondences between Bhalla and St. Louis University, which indicate that the plaintiff was not registered for the conference and did not present a paper, as he purported to have done in his reimbursement request. The defendants also submitted a copy of the plaintiff's sworn deposition testimony, wherein the plaintiff admitted that he submitted to Bhalla a falsified conference registration receipt, and that he did not present a paper at the conference. All of these documents demonstrate that any communications that the defendants had with the university police regarding the plaintiff's reimbursement request were not made unlawfully or without probable cause. To the contrary, the defendants' allegations were supported by ample documentation that would be admissible at trial—including the plaintiff's own sworn admissions.

The plaintiff, on the other hand, failed to present any admissible evidence demonstrating that the defendants acted unlawfully or without probable cause. The only evidence that the plaintiff submitted in opposition to the defendants' motion for summary judgment was his deposition testimony, consisting of bare conclusory assertions that the defendants directed the police to arrest him on the basis of false allegations. See *Chadha* v. *Charlotte Hungerford Hospital,* 97 Conn. App. 527, 540, 906 A.2d 14 (2006) (no genuine issue of material fact where plaintiff relied on "his own conclusory statements and personal assessment of the motives of the defendants" in opposing summary judgment). Most damaging to the plaintiff's claims on appeal is his admission—set forth within the very deposition testimony on which he presently relies—that he did not register for the conference or present a paper as he purported to do. Because the plaintiff's claims of false arrest and malicious prosecution remain wholly unsubstantiated, we conclude that the trial court properly granted the defendants' motion for summary judgment.[5]

II

The plaintiff next claims that the trial court improperly granted the defendants' motion for summary judgment with respect to his defamation claim.[6] The following additional facts are relevant to our disposition of this claim.

The plaintiff alleged in his complaint that, in addition to the facts set forth in support of his false arrest and malicious prosecution claims, "[t]he defendants published one or more defamatory statements about the plaintiff. . . . The defamatory statements identified the plaintiff to a third person. . . . The plaintiff's reputation suffered injury as a result of the statements." Although the complaint does not set forth specific facts in support of the plaintiff's defamation claim, the plaintiff's memorandum opposing the defendants' motion for summary judgment provides the following: "The defendants defamed the plaintiff by publishing material false allegations about him, falsely claiming both criminal behavior and professional incompetence. . . . The defendants published this information to members of the . . . [u]niversity [p]olice, to the [university] newspaper, to the New Haven Register, and on the Internet. . . . On the day after the plaintiff's arrest, the defendant Norton published material false statements about the plaintiff to the [university] community at large in the 'President's Dialogue.' . . . The plaintiff was identified as the subject of defendant Norton's comments, which included stating that the plaintiff's arrest was 'cleaning up the school' . . . .

"The plaintiff further suffered substantial harm to his reputation. . . . He testified that, after the publication of a claim that he had engaged in criminal conduct, he was removed from his positions at Albertus Magnus [College] and the University of New Haven. . . . Those positions have never been restored to him. . . . The plaintiff further was removed as [d]irector of the [masters of business administration] program at [the university]. . . . That position has never been restored. . . . The plaintiff had travel restrictions placed upon him by his employer subsequent to the defendants' defamation." (Citations omitted.)

The defendants, in moving for summary judgment, argued that the plaintiff failed to establish a prima facie defamation claim, and that the defendants were protected by the doctrine of qualified immunity.[7] In its memorandum of decision granting the defendants' motion for summary judgment, the trial court determined that "[t]he plaintiff argues, without documentary evidence, that the defendants published . . . defamatory statements to the university police, in the university newspaper, to the New Haven Register, on the Internet, and in the 'President's Dialogue.' Although the plaintiff's proffered deposition testimony consists of assertions that the statements were false, he provides no documentary evidence to counter the defendants' evidence as

to the truth of the allegedly defamatory statements made by them. The plaintiff's evidence merely consists of his own assertions that the statements were false. These assertions do not call into question the alleged facts that the plaintiff submitted an altered receipt to the university so as to be reimbursed for the registration fee for a conference which the plaintiff neither registered [for] nor attended." Moreover, the court stated that "[e]*ven if* the defendants made defamatory statements about the plaintiff, they have demonstrated that they are entitled to qualified immunity. . . . The plaintiff has offered no admissible evidence to establish malice in fact or actual malice, which is required to overcome the immunity." (Citation omitted; emphasis added.)

The plaintiff contends that the court improperly relied upon the doctrine of qualified immunity as its "*sole basis*" for granting the defendant's motion for summary judgment because such doctrine was inapplicable as a matter of law. (Emphasis added.) Contrary to the plaintiff's characterization, the court cited the doctrine of qualified immunity only as an *alternative basis* for granting summary judgment, and not as the sole basis for its decision. The court's decision principally was based upon its determination that the plaintiff failed to raise a genuine issue of material fact as to the prima facie elements of his defamation claim.

"It is well established that this court may rely on any grounds supported by the record in affirming the judgment of a trial court." *State* v. *Burney*, 288 Conn. 548, 560, 954 A.2d 793 (2008). In this appeal, the plaintiff does not claim that the court improperly determined that he failed to establish a prima facie defamation claim. "An unmentioned claim is, by definition, inadequately briefed, and one that is generally . . . considered abandoned." (Internal quotation marks omitted.) *State* v. *Saucier*, 283 Conn. 207, 223, 926 A.2d 633 (2007). An appellant's failure to raise all possible grounds for reversal operates as waiver. See *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, 306 Conn. 304, 325 n.10, 50 A.3d 841, (2012), cert. denied, U.S.     , 133 S. Ct. 1809, 185 L. Ed. 2d 812 (2013). Accordingly, because the plaintiff waived the ground upon which the court based its decision, we decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The university filed a motion to dismiss the claims against it, which the court, *A. Robinson, J.*, granted on July 31, 2008, on the ground of sovereign immunity. The university, therefore, is not a party to this appeal. In this opinion, we refer to the individual defendants collectively as the defendants, and individually by name where appropriate.

[2] This deposition was conducted in connection with the plaintiff's similar claims against the university brought in the United States District Court for the District of Connecticut subsequent to the commencement of this state court action. The federal claims set forth within that action were resolved by summary judgment in favor of the university, and the remaining state

claims were ultimately dismissed for lack of subject matter jurisdiction on the ground of the doctrine of sovereign immunity. See *Nodoushani* v. *Southern Connecticut State University*, United States District Court, Docket No. 3:08CV00561 (AWT) (D. Conn. September 29, 2011), aff'd in part, vacated in part, 507 Fed. Appx. 79 (2d Cir. 2013).

[3] Although the substantive analysis of the plaintiff's § 1983 and common-law claims of false arrest and malicious prosecution is virtually identical under § 1983 and the common law, in order to establish a § 1983 claim, the plaintiff bears the additional burden of demonstrating both a constitutional or statutory violation, and that the alleged misconduct was carried out "under color of state law." See *West* v. *Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). With respect to the latter requirement, the trial court ruled that the plaintiff failed to demonstrate the existence of a genuine issue of material fact as to whether the defendants were acting under color of state law. In this appeal, the plaintiff claims that this determination of the trial court was improper. We need not reach this claim, however, in light of our conclusion, as set forth in part I of this opinion, namely, that the plaintiff failed to establish a genuine issue of material fact as to the prima facie elements of his false arrest and malicious prosecution claims.

[4] Notably, the plaintiff does not contend that the defendants *physically* restrained him.

[5] We further note that, in this appeal, the plaintiff additionally claims that the trial court failed to analyze his federal false arrest claim under the standard set forth in *Franks* v. *Delaware*, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). The plaintiff relies upon *Golino* v. *New Haven*, 950 F.2d 864 (1991), cert. denied, 505 U.S. 1221, 112 S. Ct. 3032, 120 L. Ed. 2d 902 (1992), and *Ham* v. *Greene*, 248 Conn. 508, 729 A.2d 740, cert. denied, 528 U.S. 929, 120 S. Ct. 326, 145 L. Ed. 2d 254 (1999), for the proposition that the court was required to conduct an inquiry into whether the affidavit supporting the arrest warrant, when viewed in the absence of material misstatements or omissions, was supported by probable cause sufficient to support the issuance of the arrest warrant. In light of our determination that the trial court properly granted the defendants' motion for summary judgment on the plaintiff's federal false arrest claim, as discussed in part I of this opinion, we decline to review his *Franks* claim. See *Russell* v. *Russell*, 91 Conn. App. 619, 636–37, 882 A.2d 98 (unnecessary for appellate court to review all claims brought on appeal where one claim is dispositive), cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005).

[6] "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him . . . . To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." (Citation omitted; internal quotation marks omitted.) *Cweklinsky* v. *Mobil Chemical Co.*, 267 Conn. 210, 217, 837 A.2d 759 (2004). "For a claim of defamation to be actionable, the statement must be false and truth is an affirmative defense." *Rafalko* v. *University of New Haven*, 129 Conn. App. 44, 53, 19 A.3d 215 (2011).

[7] "A [governmental] defendant will be entitled to qualified immunity if either (1) his actions did not violate clearly established law or (2) it was objectively reasonable for him to believe that his actions did not violate clearly established law." (Internal quotation marks omitted.) *Fleming* v. *Bridgeport*, 284 Conn. 502, 519, 935 A.2d 126 (2007).