******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# VIRGINIA SILANO *v.* GEORGE COONEY ET AL.
## (AC 40293)

DiPentima, C. J., and Sheldon and Moll, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant C and his business, the defendant H Co., for, inter alia, slander per se and libel per se. H Co. had conducted audits and investigations on behalf of P Co., a New York entity that bottled soda. The audits were conducted pursuant to a contract that H Co. had with W Co. While conducting audits, C purchased P Co.'s products throughout New York at his own expense in an attempt to procure contracts with other P Co. distributors, and as a result, C accumulated large quantities of soda. When a housing association of which C was a member installed a vending machine, C stocked it with soda, which was sold for the benefit of the association. The plaintiff, who also was a resident of the housing association, complained to C about discarded soda cans and the fact that they could not be returned for a bottle deposit refund in Connecticut because they had been purchased in New York. The plaintiff also made phone calls to P Co., complaining that C was redistributing expired P Co. products that were not redeemable in Connecticut. A, the president of W Co., thereafter informed C that the plaintiff had made false and misleading allegations to P Co. that C was selling expired and dirty soda in Connecticut, and that C had been acting in an otherwise rude and unprofessional manner while doing so. C then gave a written statement to the police in which he claimed that the plaintiff's allegations had caused a threat of cancellation of his services with P Co.'s organization, and that her allegations served no other legitimate purpose than to repeatedly annoy and alarm him and his business associates to the point of unnecessary disruption. The plaintiff was thereafter charged with harassment in the second degree in violation of statute (§ 53a-183), which was punishable by a term of imprisonment. The harassment charge was later dismissed, after which the plaintiff commenced this action. The trial court rendered judgment for C and H Co. on all counts of the plaintiff's complaint. The court concluded that C's statements to the police were not defamatory because they were true. The court also determined, inter alia, that the crime of harassment in the second degree did not involve moral turpitude and, thus, could not support a claim of defamation per se. On appeal to this court, the plaintiff claimed, inter alia, that the trial court improperly concluded that harassment was not a crime that involves moral turpitude and that C's statements to the police did not constitute slander per se or libel per se. *Held* that the trial court properly rendered judgment in favor of C on the plaintiff's claims of slander per se and libel per se; although the trial court applied the law incorrectly when it concluded that harassment in the second degree did not involve moral turpitude and, instead, should have also considered whether harassment would constitute a crime to which an infamous penalty is attached, that court's finding that C's statements were not defamatory because they were true was not clearly erroneous, as there was sufficient evidence for the court to find that A had made the statements to C that C in turn relayed to the police, the plaintiff conceded in her original complaint and testimony that she had contacted P Co. and discussed matters concerning C and the vending machine, and, notwithstanding the plaintiff's contention that the court failed to credit evidence that C had misled the police and sold soda that he had confiscated in connection with his business, it was the trial court's exclusive province to weigh conflicting testimony and to make determinations of credibility.

Argued January 3—officially released April 16, 2019

*Procedural History*

Action to recover damages for, inter alia, defamation, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and transferred

to the judicial district of Fairfield, where the matter was tried to the court, *Hon. Michael Hartmere*, judge trial referee; judgment for the defendants, from which the plaintiff appealed to this court. *Affirmed.*

*Virginia Silano*, self-represented, the appellant (plaintiff).

*Brock T. Dubin*, for the appellees (defendants).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Virginia Silano, appeals from the trial court's judgment in favor of the defendant George Cooney[1] on her claims of slander and libel per se. Specifically, the plaintiff argues that the court erred (1) in finding that the defendant's statements to the Trumbull Police Department were not defamatory and (2) in concluding that the defendant did not abuse his qualified privilege in making such statements to the police.[2] We are not persuaded and, accordingly, affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to this appeal. In 2009, the plaintiff and the defendant were members of the Pinewood Lake Association (association) and residents of Trumbull. At that time, the defendant, a retired New York City police officer, owned and operated a business, Hemlock Manor, LLC (Hemlock), which conducted "audits" and investigations on behalf of Pepsi Cola Bottling Company of New York (Pepsi Bottling). The audits were conducted pursuant to a contract that Hemlock had with a business known as Winthrop Douglas, Inc. (Winthrop), which, in turn, had a contract with Pepsi Bottling.

When conducting a typical audit for Pepsi Bottling, the defendant would purchase Pepsi products at various locations throughout New York in order to recover certain "codes" from these items, which he would later provide to Winthrop. The defendant also would purchase Pepsi products at his own expense in an attempt to procure contracts with other Pepsi distributors. Significantly, as a result of these endeavors, the defendant accumulated large quantities of soda. He often donated the soda to various charitable organizations throughout New York, but he also stored a substantial portion in his home garage.

In 2009, the defendant, while serving as president of the board of governors of the association, proposed that if the association acquired a vending machine, he would stock it with soda at no cost. The board of governors approved the proposal, and the association eventually acquired a vending machine. The association had the vending machine installed near the community beach on Pinewood Lake and sold the soda for fifty cents each, which was "pure profit" for the association. According to the association's financial statements, the income from the soda was $1093.54 in 2009 and was $1955.83 in 2010.[3]

At some point in 2010, however, the plaintiff became concerned about the amount of litter the vending machine was causing around her home and the quality of the soda being sold. She complained to the defendant about the discarded soda cans and the fact that they could not be returned for a bottle deposit refund in

Connecticut because they had been purchased in New York. Despite her complaint, the association continued to operate the vending machine and the defendant continued to stock it. In 2011, the plaintiff began making phone calls to Pepsi Bottling, complaining that the defendant was redistributing expired Pepsi products that were not redeemable in Connecticut. When making her complaints to Pepsi Bottling, the plaintiff provided her name and telephone number as return contact information.

On June 2, 2011, the president of Winthrop, Marc Aliberti, notified the defendant that the plaintiff was making complaints to Pepsi Bottling about him. Specifically, Aliberti told the defendant that the plaintiff was providing Pepsi Bottling with negative character references and making false allegations, including telling the company that the defendant was selling "expired" and "dirty" soda in Connecticut and acting in a negative manner while doing so. After he was provided with this information, the defendant prepared a statement to the Trumbull Police Department in order to make a record of the situation. Detective Kevin Hammel told the defendant that, while the matter appeared to be civil in nature, if the plaintiff's behavior continued, the defendant could file an additional complaint.

On July 28, 2011, Aliberti again called the defendant to tell him that the plaintiff had made additional false statements about the defendant to Pepsi Bottling. The defendant was informed that the plaintiff had accused him of selling Pepsi products to "every store in Trumbull" and that he was selling the products in an "otherwise negative manner." In a sworn statement, dated August 5, 2011, the defendant relayed this information to the Trumbull Police Department. The defendant indicated that the plaintiff's false allegations to Pepsi Bottling have "caused a threat of cancellation of [his] employment services with the Pepsi organization" and "serve no other legitimate purpose other than to repeatedly annoy and alarm [him] and [his] business associates to the point of unnecessary disruption and threat of cancellation of services."

As a result of the defendant's statements, the Trumbull Police Department commenced a criminal investigation into the matter. In connection with this investigation, Hammel on several occasions spoke with Aliberti, who corroborated the defendant's complaints.[4] Hammel concluded on the basis of this information that there was probable cause to arrest the plaintiff on a charge of harassment. He applied for an arrest warrant, and the application was granted on November 22, 2011.

Following her arrest, the plaintiff was charged with harassment in the second degree in violation of General Statutes § 53a-183.[5] After several court appearances, the charge was dismissed. On June 10, 2014, the plaintiff commenced a civil action against the defendant and

Hemlock, alleging claims sounding in malicious prosecution, slander per se and libel per se. Following a bench trial, the court rendered judgment in favor of the defendant and Hemlock on all counts. The plaintiff now appeals from the judgment in favor of the defendant on the third and fourth counts of her complaint, which, respectively, allege slander per se and libel per se.

On appeal, the plaintiff claims that the court erred in finding that the defendant's statements to the Trumbull Police Department did not constitute slander per se or libel per se. Specifically, the plaintiff argues that the court misconstrued established precedent in concluding that harassment was not a crime involving "moral turpitude," despite the fact that it was punishable by a term of imprisonment. Although we agree with the plaintiff that the court misconstrued the applicable law, we nonetheless conclude that the court properly found that the defendant's statements were not defamatory.[6]

We begin our analysis by setting forth the relevant legal principles and the proper standard of review. "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him  . . . . Defamation is comprised of the torts of libel and slander: slander is oral defamation and libel is written defamation.  . . .  To establish a prima facie case of defamation at common law, the plaintiff must prove that (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement.  . . .

"Statements deemed defamatory per se are ones in which the defamatory meaning of the speech is apparent on the face of the statement.  . . .  Our state has generally recognized two classes of defamation per se: (1) statements that accuse a party of a crime involving moral turpitude or to which an infamous penalty is attached, and (2) statements that accuse a party of improper conduct or lack of skill or integrity in his or her profession or business and the statement is calculated to cause injury to that party in such profession or business." (Citations omitted; internal quotation marks omitted.) *Cohen* v. *Meyers*, 175 Conn. App. 519, 544–45, 167 A.3d 1157, cert. denied, 327 Conn. 973, 174 A.3d 194 (2017). "Once the plaintiff has established that the words are false and actionable per se, barring any statutory provision to the contrary, she is entitled under Connecticut law to recover general damages without proof of special damages.  . . .  This is because the law presumes general damages where the defamatory statements are actionable per se.  . . .  On the other hand, if the words are defamatory, but not actionable per se, the plaintiff may recover general damages for harm to

her reputation only upon proof of special damages for actual pecuniary loss suffered." (Citations omitted.) *Miles* v. *Perry*, 11 Conn. App. 584, 602, 529 A.2d 199 (1987). "In a defamation case brought by an individual who is not a public figure, the factual findings underpinning a trial court's decision will be disturbed only when those findings are clearly erroneous, such that there is no evidence in the record to support them." *Gambardella* v. *Apple Health Care, Inc.*, 291 Conn. 620, 628–29, 969 A.2d 736 (2009). Our review is plenary, however, in ascertaining whether the trial court applied the correct legal standard in deciding the merits of the plaintiff's claim. See *Hartford Courant Co.* v. *Freedom of Information Commission*, 261 Conn. 86, 96–97, 801 A.2d 759 (2002).

In finding in favor of the defendant on the plaintiff's claims of defamation per se, the court noted that although, "[t]o an attorney or person trained in the law," the defendant's statements to the Trumbull Police Department accused the plaintiff of harassment in the second degree, which is a class C misdemeanor punishable by up to three months incarceration, such a crime does not involve moral turpitude and, thus, cannot support a claim of defamation per se. The plaintiff contends that the court erred in reaching this conclusion because, under the modern view of defamation, a crime of moral turpitude is a chargeable offense punishable by a term of imprisonment, such as harassment in the second degree. To the extent that there is any confusion in our law with respect to this issue, we take this opportunity to clarify our definition of defamation per se vis-à-vis imputations of criminal conduct.

In *Hoag* v. *Hatch*, 23 Conn. 585, 590 (1855), our Supreme Court acknowledged that a statement that accuses a party of a crime involving moral turpitude, or a crime subject to an infamous penalty, is actionable without having to prove special damages.[7] Following *Hoag*, our courts consistently have used the disjunctive "or" when listing the two types of criminal accusations that comprise this class of defamation per se under our law. See, e.g., *Proto* v. *Bridgeport Herald Corp.*, 136 Conn. 557, 565–66, 72 A.2d 820 (1950); *Cohen* v. *Meyers*, supra, 175 Conn. App. 544–45; *Lega Siciliana Social Club, Inc.* v. *St. Germaine*, 77 Conn. App. 846, 853, 825 A.2d 827 ("[t]o fall within the category of libels that are actionable per se because they charge crime, the libel must be one which charges a crime which involves moral turpitude or to which an infamous penalty is attached"), cert. denied, 267 Conn. 901, 838 A.2d 210 (2003). Although some crimes involving moral turpitude may also be subject to an infamous penalty; see *Yavis* v. *Sullivan*, 137 Conn. 253, 259, 76 A.2d 99 (1950); we are aware of no authority since *Hoag* that has expressly held that the accusation must allege a crime implicating both categories. We agree with the plaintiff, therefore, that the trial court wrongly concluded that, because

harassment in the second degree does not involve moral turpitude, the statements at issue were not actionable in the absence of proving special damages.[8] Rather, the court should have also considered separately whether harassment, which is punishable by a term of imprisonment, would constitute a crime to which an infamous penalty is attached. See *Battista* v. *United Illuminating Co.*, 10 Conn. App. 486, 493, 523 A.2d 1356 ("[t]he modern view of this requirement is that the crime be a chargeable offense which is punishable by imprisonment"), cert. denied, 204 Conn. 802, 803, 525 A.2d 1352 (1987).

Despite our conclusion that the court applied the law incorrectly in deciding whether the plaintiff had established a prima facie case of defamation per se, we nonetheless affirm the court's conclusion that the defendant's statements were not defamatory because the court's finding that the statements were true was not clearly erroneous. "It is well settled that for a claim of defamation to be actionable, the statement must be false . . . and under the common law, truth is an affirmative defense to defamation . . . [and] the determination of the truthfulness of a statement is a question of fact . . . ." (Internal quotation marks omitted.) *Gleason* v. *Smolinski*, 319 Conn. 394, 431, 125 A.3d 920 (2015). "Questions of fact are subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence . . . we give great deference to its findings." (Internal quotation marks omitted.) *Cheshire Land Trust, LLC* v. *Casey*, 156 Conn. App. 833, 839–40, 115 A.3d 497 (2015). Further, "[c]ontrary to the common law rule that required the defendant to establish the literal truth of the precise statement made, the modern rule is that only substantial truth need be shown to constitute the justification. . . . It is not necessary for the defendant to prove the truth of every word of the libel. If he succeeds in proving that the main charge, or gist, of the libel is true, he need not justify statements or comments which do not add to the sting of the charge or introduce any matter by itself actionable. . . . The issue is whether the libel, as published, would have a different effect on the reader than the pleaded truth would have produced." (Internal quotation marks omitted.) *Cohen* v. *Meyers*, supra, 175 Conn. App. 546.

The alleged defamatory statements at issue in this case assert, in pertinent part, that the defendant had been informed by a business associate, Aliberti, that the plaintiff had made false and misleading complaints to Pepsi Bottling. The defendant further specified that Aliberti had told him that these complaints included

allegations that the defendant was selling "expired" and "dirty" soda, that he was selling the soda in an otherwise rude and unprofessional manner, and that he was selling soda to "every store in Trumbull." In its memorandum of decision, the court found that there was uncontroverted evidence that Aliberti had made these statements to the defendant and that the defendant accurately conveyed Aliberti's statements to the Trumbull Police Department. The plaintiff contends that the court's finding that these statements were true was clearly erroneous because the defendant omitted information that would have corroborated the plaintiff's initial complaints to Pepsi Bottling, and the court ignored the testimony of several witnesses who impugned the veracity of the defendant's statements. We disagree.

Our review of the record reveals that there was sufficient evidence adduced at trial for the court to find that Aliberti had made the statements to the defendant that the defendant in turn relayed to the police. Additionally, the plaintiff conceded in her original complaint and trial testimony that she had contacted Pepsi Bottling and discussed matters concerning the defendant and the vending machine at Pinewood Lake. Further, with respect to the plaintiff's contention that the court failed to credit evidence that supported her claim that the defendant was "selling" Pepsi that he had "confiscated" in connection with his business, and thus misleading the police in claiming that the plaintiff's complaints were made solely for the purposes of harassing him and his family, "[i]t is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony. . . . It is not our role to reevaluate the credibility of witnesses or to overturn factual findings of a [trial] court unless they are clearly erroneous. . . . If there is any reasonable way that the [trier of fact] might have reconciled the conflicting testimony before [it], we may not disturb [its] [credibility determination]." (Citations omitted; internal quotation marks omitted.) *Wall Systems, Inc.* v. *Pompa*, 324 Conn. 718, 741, 154 A.3d 989 (2017). Thus, having determined that the court's finding that the defendant's statements to the police were true was not clearly erroneous, we conclude that the court properly rendered judgment in favor of the defendant on the plaintiff's claims of slander per se and libel per se.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff's complaint also named Hemlock Manor, LLC, as a defendant. Hemlock Manor, LLC, filed an appearance in this appeal and submitted a joint brief with Cooney. The plaintiff, however, has appealed only from the judgment on the third and fourth counts of her complaint; those counts were directed solely to Cooney. Accordingly, we refer to Cooney as the defendant in this appeal.

[2] For the reasons set forth in this opinion, we do not disturb the trial court's finding that the defendant's statements were not defamatory and, thus, decline to reach the merits of the plaintiff's second claim regarding

whether the defendant abused his qualified privilege in making such statements.

[3] The record does not indicate why the income from these two years is not a multiple of fifty cents, given the court's factual finding respecting the sale price for each can of soda. Nonetheless, the plaintiff does not challenge this finding, and it is ultimately not material to the issues on appeal.

[4] In an affidavit that was appended to the application for an arrest warrant for the plaintiff, Hammel averred: "On October 18, 2011, the affiant received a typed written statement from Marc Aliberti of [Winthrop], related to his knowledge of the calls made to [Pepsi Bottling] and [Hemlock], which employs [the defendant]. Mr. Aliberti reports, among other things, that [Winthrop] conducts business with both, [Pepsi Bottling] and [Hemlock]. Aliberti has been, and continues to be a contact and business associate of both organizations. [Hemlock] is contracted in the scope of audits and investigations and does not represent Aliberti or [Pepsi Bottling] in the scope of sales, customer service or any other public or product interaction.

"Aliberti continues that on June 2, 2011, a representative from [Pepsi Bottling] notified him that they have been contacted by [the plaintiff], who was complaining that [the defendant] was misrepresenting them by selling expired and otherwise unfit Pepsi products and misrepresenting himself, while selling Pepsi products in a negative manner by cursing and being rude to customers in and around the area of Trumbull . . . . [The plaintiff] left her home telephone number as a return contact and there were several communications between [the plaintiff] and [Pepsi Bottling] before the allegation was deemed unsubstantiated. [Pepsi Bottling] expressed to Aliberti [its] displeasure with these allegations and discussed possible ramifications.

"On July 28, 2011, on a separate occasion, Aliberti was again contacted by [Pepsi Bottling] to inform him that they were again contacted by [the plaintiff]. [The plaintiff] once again complained that [the defendant] was misrepresenting the Pepsi organization by selling expired and otherwise unfit Pepsi products 'all over Trumbull' and she provided a negative character reference. [The plaintiff] left her home phone number as a return contact and there were several communications between [the plaintiff] and [Pepsi Bottling]. This time, the representative at [Pepsi Bottling] asked [the plaintiff] to provide further proof of her allegations, which she was unable to provide. [Pepsi Bottling] again expressed their displeasure of [the plaintiff's] continued allegations and further discussed a termination of [its] contract with [Hemlock] due to [the plaintiff's] continuing allegations. Aliberti also stated that he has discussed these incidents with representatives of [Pepsi Bottling] and can confirm that these events have put the future of their relationship with [Hemlock] in jeopardy."

[5] General Statutes § 53a-183 (a) provides: "A person is guilty of harassment in the second degree when: (1) By telephone, he addresses another in or uses indecent or obscene language; or (2) with intent to harass, annoy or alarm another person, he communicates with a person by telegraph or mail, by electronically transmitting a facsimile through connection with a telephone network, by computer network, as defined in section 53a-250, or by any other form of written communication, in a manner likely to cause annoyance or alarm; or (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm."

[6] "We note that our rationale is slightly different than that of the trial court. [I]t is axiomatic that [w]e may affirm a proper result of the trial court for a different reason." (Internal quotation marks omitted.) *Rafalko* v. *University of New Haven*, 129 Conn. App. 44, 51 n.3, 19 A.3d 215 (2011).

[7] The *Hoag* decision does not cite any authority for this precept, but some scholars contend that the special significance our common law places on accusations of criminal conduct involving moral turpitude or that is punishable by an infamous penalty is a "residue of a bygone age in which defamation was a disfavored action." 2 F. Harper et al., Torts (3d Ed. 2006) § 5.10, p. 118. Specifically, in the Middle Ages, in order to establish the jurisdiction of the English common law courts, the plaintiff was required to show "temporal" harm—i.e., that the false accusation could subject that party to endangerment of life or liberty. Id., p. 109 n.4. In the absence of temporal harm, the claim would likely be treated as a 'spiritual' matter under the jurisdiction of the ecclesiastical courts." Id.; see also W. Keeton et al., Prosser and Keeton on the Law of Torts (5th Ed. 1984) § 112, p. 788 ("[t]he exact origin of these exceptions is in some doubt, but probably it was nothing more unusual than a recognition that by their nature such words were especially likely to cause pecuniary, or 'temporal,' rather than 'spiritual' loss"). Some

of these same scholars argue that courts should reevaluate their jurisprudence in this area, given that the ecclesiastical courts were abolished several centuries ago and the distinctions drawn between crimes for the purposes of defamation per se are in some manner arbitrary. Compare *Hoag* v. *Hatch*, supra, 23 Conn. 590–91 (bribery is crime involving moral turpitude), with *Moriarty* v. *Lippe*, 162 Conn. 371, 383, 294 A.2d 326 (1972) ("[a]ssault is a crime held lacking in the element of moral turpitude" [internal quotation marks omitted]).

[8] We disagree with the plaintiff, however, to the extent that she contends that a crime of moral turpitude is one that can be punished by a term of imprisonment. This argument, we believe, misconstrues *Battista* v. *United Illuminating Co.*, 10 Conn. App. 486, 493, 523 A.2d 1356, cert. denied, 204 Conn. 802, 803, 525 A.2d 1352 (1987), in which this court held that the modern view of a crime subject to an infamous penalty is a crime punishable by a term of imprisonment. See also 3 Restatement (Second), Torts § 571 (1977) ("[o]ne who publishes a slander that imputes to another conduct constituting a criminal offense is subject to liability to the other without proof of special harm if the offense imputed is of a type which, if committed in the place of publication, would be (a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude"). Conversely, "[m]oral turpitude . . . [remains] a vague and imprecise term to which no hard and fast definition can be given. . . . A general definition . . . is that moral turpitude involves an act of inherent baseness, vileness or depravity in the private and social duties which man does to his fellowman or to society in general, contrary to the accepted rule of right and duty between man and law." (Citations omitted; internal quotation marks omitted.) *Moriarty* v. *Lippe*, 162 Conn. 371, 383, 294 A.2d 326 (1972).

---